White *vs.* Herndon.

WRIGHT & WARREN, for plaintiffs in error.

STROZIER & SMITH, VASON & DAVIS, HINES & HOBBS, for defendants in error.

---

THOMAS C. WHITE, plaintiff in error, *vs.* DILLARD HERN-DON, defendant in error.

THOMAS C. WHITE and J. S. WHITE, *vs.* WILLIAM M. HASLETT and E. M. RUCKER, Executors.

A judgment *inter partes* is conclusive, as to all matters which were before the Court or by the laws governing the Court rendering the judgment must have in issue before it, and it is not within the power of the General Assembly, under the Constitution, to authorize the opening of judgments so as to allow a rehearing of issues, which were, or by the rules of law, must have been heard by the Court rendering the judgment, but cross actions, equitable defenses, and rights which have accrued since the judgment do not come within this rule, and it is competent for the Legislature to authorize such defenses to be taken advantage of by a motion in the nature of a bill in equity, to open the judgment and adjust the rights of the parties according to such equities.

Where the defendant in a judgment of law filed his affidavit, under the Act of 1868, for the relief of debtors, etc., in the precise words required by the statute, and the sheriff returned the papers into Court, as therein required, it was error in the Court to dismiss the affidavit without giving the defendant an opportunity to set up such cross actions, equitable defenses and rights accruing to him subsequent to the judgment, as under said Act are allowed to be set up in a motion to open the judgment.

The 2d and 7th sections of the Act of the General Assembly of this State, passed in 1868, for the relief of debtors and to authorize the adjustments of debts on principles of equity, so far as they permits the defendant in a judgment to open the same by motion and set up defenses thereto, which were, or by the law at the date of the judgment must have been in issue before the Court rendering the judgment, are in violation of Article 9th, section 6th, and of Article 1st, section 21st of the Constitution of this State, but so far as said Act permits judgments to be opened by motion, so as to let in defenses arising since the date of the same, or cross actions and defenses purely equitable, though existing at the date of said Act, is not unconstitutional, but is within the powers granted to the Legislature by the Constitution. WARNER, J., dissenting.

Relief Law. Decided by Judge GARNETT ANDREWS. Elbert Superior Court. March Term, 1869.

Dillard, on the 11th of September, 1866, obtained a judgment, in said county, against said White. *Fi. fa.* was issued upon it and a levy was made. White then made an affidavit in which he stated simply that he desired "to take the benefit of an Act entitled an Act for the relief of debtors, and to authorize the adjustment of debts, upon the principles of equity, passed by the General Assembly of Georgia, in the year 1868." The sheriff returned the *fi. fa.* and affidavit to Court.

When the cause was called, White's attorneys offered in evidence said *fi. fa.* and said affidavit. Upon motion of Dillard's attorney, it was ordered that said affidavit be dismissed and that the *fi. fa.* proceed.

It is stated in the assignment of errors, that the Judge so did, because he held said Relief Law, so far as it authorizes the submission of judgments to juries, for such purpose, was unconstitutional, and said holding is brought here for review.

White *vs.* Herndon.

H. A. ROEBUCK, J. D. MATHEWS, for plaintiff in error.

HESTER & LUMPKIN, for defendant in error.

At the same term, before the same Judge, the said Thomas C. White and J. S. White having made affidavit, as aforesaid, to stay the collection of a *fi. fa.* in favor of Haslett & Rucker, executors, against them, founded upon a judgment of said Court, on the 11th of September, 1866, the same proceedings were had, and the judgment in that cause is also assigned as error. It was argued with *White vs. Herndon.*

(These cases were argued at June Term, 1869, but were held up by the Court.)

H. A. ROEBUCK, JAMES D. MATHEWS, for plaintiffs in error.

E. P. EDWARDS, for defendants in error.

McCAY, J.

Nothing is better settled than that the judgment of a Court of competent jurisdiction is conclusive between the parties as to the matters at issue between them: 2 Phillip's Evidence, 2. Nor does this rule confine the effect of the judgment to such matters as were in fact pleaded. It is the bounden duty of parties to plead every fact, *pro* and *con.*, that effects their respective rights, so far as the Court has jurisdiction to hear and determine the questions which such facts give rise to: 2 Phillips Ev., 2–26.

But if the Court have no jurisdiction over the rights growing out of the facts, as if the judgment be a judgment at law and there exist a state of things which, by the powers of the Court, it cannot have, and which are within the exclusive jurisdiction of a Court of Equity, then the judgment at law does not conclude the parties. They may, after the judgment is complete, go into equity, enjoin the judgment at law, and have the matter reheard by a Court of Equity in the light of the facts which create equitable rights: *Pollock, Adm'r,*

*etc., vs. Gilbert,* 16th *Ga.,* 398; *White vs. Crew,* 16th *Ga.,* 416; *Hollingshead vs. McKenzie,* 8th *Ga.,* 457.

So, too, if the defendant have a right—a legal right—of cross action, as set-off or recoupment, he may or he may not plead it in reply to the plaintiff's claim. If he do in fact plead it, and the facts are investigated and enter as an element into the judgment of the Court, the right cannot be again set up: Seddon vs. Tutop, 6 T. R., 607. See also, 2 Phillips Ev., 13–15; Cowen & Hill's Notes, volume 2, 154, 155. But unless this right of cross-action or recoupment be set up, a judgment between the parties in another matter, does not conclude it: Cowen & Hill's Notes; Phillip's Ev., vol. 2, 154, 155.

A judgment is then conclusive between the parties as to all matters which were, or by law must have been heard by the Court rendering the judgment. But equitable rights are not concluded by a judgment at law, unless they be in fact set up and adjudged. Nor are cross-actions concluded by a judgment in which they were not in fact considered. The Constitution of 1868 gives full force and effect to all judgments obtained under the previous State organizations, except as therein provided: Art. 10, sec. 2. This provision of the Constitution is the paramount law, and binds the General Assembly as well as the Courts, and any Act of that body, the object and effect of which is to deny to such judgments full force and effect, is beyond the power vested by the Constitution in the Legislature. But this clause can hardly mean that such judgments are to be enforced at all events. It was intended simply to cure certain supposed objections to judgments obtained between January, 1861, and the going into operation of the new government, and to transfer over to the new Courts both them and the judgments of the Courts of the State government, which went to wreck in the revolution. These judgment are declared to have full force as though there had been no interruption in the Courts. In other respects, they are still subject to attack by the Courts under the law, as they might have been when obtained. If there be *equitable* reasons why they should not be paid,

although they existed at the date of the judgment, or, if the defendant have a cross-action against the plaintiff, or if new rights have sprung up which were not and could not have been settled by the judgment, we see no reason why the Legislature may not permit the defendant to have those rights settled by the machinery provided in the Act of 1868, and known as the Relief Act.   If the defendant have an equitable defense to the cause of action, or if he have a cause of action of an independent nature, it is surely within the power of the Legislature to permit him to set it off against the plaintiff's judgment instead of filing a bill or bringing a new suit. The Act only changes the form of the remedy—allows that to be done by motion which before was required to be by bill or by cross-action.   It is nothing but saying that the claim of the defendant may be ascertained and set-off before the plaintiff is permitted to get his money.   If the defendant has a real, substantial equity this is nothing but justice, and it seems absurd to say that it is unconstitutional.   The Act makes no attempt to interfere with the judgment   It recognizes it as conclusive that, in the matter sued and in issue, the rights of the parties are just as the judgment fixes them according to law.   But it permits the defendant to set up new matter, to-wit: an equitable defense or a cross-action, and we think it clearly within the power of the Legislature.

In these cases the defendant made his affidavit as the statute requires.   When the term arrived, they had a right to make out their claims against the plaintiffs, and if they were good under the pleading, they had a right to have them submitted to a jury.   This the Court refused thereby dismissing their affidavits, and in this we think the Court erred.

Judgment reversed.

BROWN, C. J., concurring.

In my opinion the judgment of the Court in both these causes, which were argued together, was erroneous.

1. I hold that when a party is sued in a Court of law, he is bound to make any legal defense which he has against the claim of the plaintiff, and if he is not prevented by fraud,

accident, or the act of the adverse party, unmixed with negligence on his part, and fails to make his defense, the judgment, whether erroneous or not, if not excepted to within the time allowed by law, is conclusive against him, and the Legislature has no power to open it, to let in any legal defense which existed at the time of the trial.

2. A defendant sued at law is not bound, however, to set up a defense *purely equitable,* and a Court of Chancery may grant an injunction in such case before or after judgment; and I take it to be a correct principle that the Legislature may authorize any relief in a Court of law which can be had in Chancery without such legislation. But it must be such an equity between the parties as would be the proper subject of equitable interference, as the insolvency of the plaintiff, the fact that he is beyond the jurisdiction of the Court, or some other equitable defense or claim. In such case I see no good reason why the Legislature may not authorize the equitable claim of the defendant to be set-off against the judgment of the plaintiff, or why it may not authorize the judgment to be opened for that purpose.

This view of the power of a Court of Chancery to set aside or enjoin a judgment is sustained by numerous authorties. I quote a single one from the opinion of Judge Lumpkin, in *Pollock vs. Gilbert,* 16*th Georgia,* on page 402, as follows: "But when a case involves matter exclusively within the jurisdiction of equity, its final decision at law will not preclude a re-examination in Chancery. Under such circumstances the doctrine of *res adjudicata* does not apply. For as the matter in which the intervention of equity is asked could not have been determined at law, it cannot be within the estoppel of the legal decision. The existence of an equitable defense, which could not have been made available as a legal defense, is therefore a sufficient ground for obtaining an injunction before *or after judgment:* 2 White and Tudor's Leading Equity Cases, 96. And after reciting the cases of Foster vs. Wood, 6 Johns' Ch. R., 89, and the Marine Insurance Company of Alexandria vs. Hodgson, 7 Cranch, 332, and Truly vs. Wanger, 5 Howard, 141, these annotators con-

tinue: "It is well settled in accordance with the rule laid down in those cases, that equity will interfere by injunction either before *or after* judgment, whenever the case is shown to involve matters purely of equitable cognizance and essential to its proper determination. (Ibid, 97.) Upon a proper case being made, a Court of Equity will interfere to arrest the proceeding at law at any stage of it. Thus an injunction is sometimes granted to stay trial; sometimes after verdict to stay judgment; sometimes after judgment to stay execution; sometimes after execution to stay the money in the hands of the sheriff, if it be a case of *fieri facias*, or *to stay the delivery of possession*, if it be a writ of possession: 2 Wooddes' Lectures, 56, pp. 406, 407, 412, 416; 1 Mad. Ch. Pr., 109, 110; Eden on Injunctions, ch. 11, p. 44. This is so complete an epitome of the whole doctrine upon this subject as deducible from the opinions of Chancellor Kent in the case, 6th Johnson, and of Chief Justice Marshall, in 7 Cranch, and of Mr. Justice Greer, in 5th Howard, as well as the general current of authorities, that we consider it useless to extend the discussion." Again, on page 405, Judge Lumpkin says:

* * * "The general principle with regard to injunctions, *after a judgment at law*, is this: that any fact which proves it to be *against conscience* to execute such judgment, and of which the party could not have availed himself in a Court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fraud or negligence in himself or his agents, will authorize a Court of Equity to interfere by injunction to restrain the adverse party from availing himself of said judgment?"

From these authorities it appears that there is a class of cases where a Court of Equity may at any stage of the proceedings interfere by injunction, and arrest the proceedings at law, even after judgment, and I am well satisfied that the Legislature has power to authorize any such defense as might be made available in equity, to be made in the manner pointed out in the Relief Act, in a Court of law, after judgment has been rendered.

But I am not prepared to go beyond this and hold that the Legislature has power to authorize judgments indiscriminately to be opened for causes of legal defense, which existed, and which it was the duty of the defendant to have set up before the rendition of the judgment. It does not appear from this record whether the defendant in this case had any such defense to the judgments which he sought to have opened in the Court below. But having filed his affidavit in compliance with the statute, it was the duty of the Court, at the first term, to have permitted him by proper pleading to set up such cause against the judgment if it existed, and I think the Court erred in dismissing the affidavits without allowing him that opportunity.

I will simply add, that the judgment may, in my opinion, be opened under the authority of an Act of the Legislature, to let in an *equitable defense,* which originated since its rendition, if the ends of justice require it, and it would be against equity and good conscience for the plaintiff to enforce the judgment

WARNER, J., dissenting.

This case, as well as the case of *Bonner vs. Martin,* (last case *ante,*) involve the question of the constitutionality of the second section of the Relief Act of 1868, and will both be considered together. In my judgment, the second section of that Act, which provides for the opening of judgments rendered by the Courts of this State on contracts made prior to the first day of June, 1865, *for the causes therein stated,* is in violation of the 10th section of the first article of the Constitution of the United States, for the reasons stated in my dissenting opinion in *Cutts & Johnson vs. Hardee,* 38*th Georgia Reports,* 381. The reasons given by me in that case, as applicable to the first section of the Relief Act of 1868, apply with increased force and strength to the second section of the Act, which relates to the opening and scaling judgments which are *debts of record.* The second section of that Act is a more palpable and obvious violation of the Constitution, if possible, than the first section thereof. Besides, that

section of the Act is in violation of the provisions of the fifth and sixth sections of the 11th Article of the Constitution of this State. I am of the opinion, therefore, that the judgment of the Court below in both cases should be affirmed.