Argued at Pendleton May 7; affirmed June 12; rehearing denied
July 24, 1934

# JOHNSON *v.* CURL

(33 P. (2d) 237, 34 P. (2d) 975)

*Will M. Peterson* and *John F. Kilkenny,* both of Pendleton (Raley Peterson, Raley, Raley & Warner, and Alfred F. Cunha, all of Pendleton, on the brief), for appellant.

*Charles Z. Randall,* of Pendleton (Fee & Randall, of Pendleton, on the brief), for respondent.

BAILEY, J.  Plaintiff seeks to recover on a promissory note alleged to have been executed on November 1, 1929, and dated September 20 of the same year, for the principal sum of $1,726.62 with interest from date at the rate of six per cent per annum, less $50 paid on the note on August 27, 1931, and reasonable attorneys' fee.

The defendant in his answer denies that the note was executed on November 1, 1929, and alleges that he made, executed and delivered the same to the plaintiff on September 20, 1929. He denies the payment thereon of $50.

As a further and separate answer and defense and as ground for affirmative relief, the defendant alleges that he is entitled to relief arising out of facts requiring the interposition of a court of equity, and that he has no plain, speedy or adequate remedy at law against the plaintiff. This answer further avers that on or about the middle of September, 1929, plaintiff and defendant entered into an oral agreement with each other whereby they "mutually formed a partnership with themselves only as partners, under the name of C. C. Curl Livestock Company, for the purpose of engaging in a general sheep industry", and mutually agreed as such partners to purchase a flock of sheep with which to begin the enterprise, and to purchase other sheep thereafter as they might deem advisable in conducting the business of the partnership; and that it was mutually agreed that the plaintiff would own a one-third and the defendant a two-thirds undivided interest in such business.

It is then stated in the answer that the defendant was indebted to the plaintiff for farm work and labor and that the sum of money due plaintiff for said work, plus the amount of money in the bank belonging to him, totaled $1,726.62, "which said sum plaintiff, through defendant, advanced and contributed to the partnership to aid and assist the defendant in purchasing sheep for plaintiff and defendant, as hereinafter more particularly alleged; that on or about the said 20th day of September, 1929, as evidence of the amount obtained by the defendant, for said work and labor and for said money advanced and contributed, the defendant duly made, executed and delivered to the plaintiff the promissory note in writing described in the complaint of the plaintiff filed against the defendant herein; that at said time, and as a part of the

same transaction, it was mutually understood and agreed by and between plaintiff and defendant, that when said sheep, as hereinafter more particularly alleged, should be purchased by plaintiff and defendant, in their partnership capacity, the plaintiff would be considered as having paid upon the purchase price of said sheep, the sum of $1,726.62, and would pay the balance of his portion of the purchase price thereof in the manner hereinafter alleged''.

The answer further avers that on or about September 17, 1929, the plaintiff and the defendant as partners agreed to purchase a certain number of sheep for an agreed price; that the defendant, as a part of the purchase price, paid the sum of $1,200 on behalf of the plaintiff and the defendant, and thereafter on behalf of the partnership the defendant paid the balance of the purchase price and in the same capacity later purchased a number of buck sheep; that the entire amount of money so paid was advanced by the defendant with the consent of the plaintiff and with the understanding that the plaintiff should be liable to the defendant for the payment of one-third of the amount, or $5,082.66; and that the amount of $1,726.62 ''advanced and contributed by the plaintiff as aforesaid, and evidenced by said promissory note described in plaintiff's complaint, should be applied and the same was applied, upon said amount due from the plaintiff to the defendant upon the purchase price of said sheep''.

The answer then alleges that after operating for some time as partners the plaintiff and the defendant discontinued their business relationship and it was mutually understood that the plaintiff should turn over to the defendant his interest in the partnership and be relieved of the obligation to pay the balance of

one-third of the investment therein; and that thereupon the partnership was dissolved, but the plaintiff failed to surrender to the defendant the promissory note described in plaintiff's complaint. The defendant prays for the cancellation of the note and for other equitable relief.

The plaintiff filed a reply putting in issue the material allegations of this answer.

The action at law and the equitable defense were tried by the circuit court at the same time. Thereafter the court dismissed the purported equitable defense on the ground that the affirmative answer did not allege facts necessitating the interposition of a court of equity, but permitted that pleading to stand as an answer in the law action. Findings of fact were then made in favor of the plaintiff for the full amount prayed for in the complaint. From the decree dismissing the defendant's plea in equity and from the judgment in favor of plaintiff, the defendant appeals.

The evidence is undisputed that the plaintiff in 1917, at the age of sixteen years, began to work for Frank Curl, father of C. C. Curl, and with the exception of approximately six months had been continuously working for either the father or the son the entire time up to the date of the note in this case. His work was general farm labor. His schooling had ended with the eighth grade. Plaintiff was entirely uninformed as to the general conduct of business. He kept no account of money due him for labor, but left that matter to his employer. His experience with promissory notes was limited to one instance, the note here in suit.

The defendant, on the other hand, had for many years been actively engaged in business, operating large wheat farms and elevators, and had in the man-

agement of his business from time to time borrowed large sums of money evidenced by promissory notes. He had attended college for at least one year.

Prior to September, 1929, the plaintiff and the defendant at various times had discussed together the question of going into the sheep business as partners, but both testified that nothing definite had been agreed upon until September, 1929. According to the defendant's testimony, he and plaintiff entered into a partnership agreement about the middle of September of that year, at which time it was understood that the defendant was to have a two-thirds interest and the plaintiff a one-third interest in the new undertaking. At that time the plaintiff had over $480 due him from the defendant, and in addition a joint bank account with his wife of over $1,200. The defendant testified that the plaintiff agreed to withdraw the money from the bank and use it in the partnership business and that the plaintiff was to be given credit for that amount of money, together with the money due him from the defendant, as a partial payment toward his one-third interest, and that the balance of plaintiff's investment therein was to be paid out of his share of profits accruing from the business.

The plaintiff denied that any partnership arrangement was ever effected, but testified that when he approached the defendant to put in writing an agreement as to their joint undertaking the latter absolutely refused to consider a written agreement between the parties.

The $1,244.35 in the joint bank account of plaintiff and his wife was withdrawn by plaintiff on or about September 20, 1929, and deposited in the name of C. C. Curl Livestock Company. This was done after a flock

of sheep had been purchased and paid for in part. According to the undisputed testimony, the plaintiff had no authority to check on any of the bank account in the name of C. C. Curl Livestock Company. The defendant had represented to the bank, in connection with obtaining loans, that he owned all the sheep and other assets of that company. No assumed-name certificate of the company was filed with the county clerk showing that plaintiff was interested in it. The business of C. C. Curl Livestock Company was reported by defendant for both federal and state income tax purposes as his own and not that of any partnership. Likewise, the defendant listed the sheep with the county assessor for taxation purposes as belonging to himself only.

The plaintiff's testimony is to the effect that, because he was unable to persuade defendant to reduce to writing any agreement as to his interest in any partnership venture, he demanded of and received from the defendant, early in November, 1929, the note here involved. In regard to the giving of this note the defendant testified as follows:

"Q. Now, did he ask you for this promissory note that you gave him on the 20th of September, 1929, which is now in evidence?

"A. No, sir.

"Q. How did you happen to give him that note?

"A. He advanced me the money to put into the business and he wanted to know what he had to show that he had any money in there and I said he probably would not have a hell of a lot and that I had better give him a note to show he had anything in there.

"Q. What did he say?

"A. He said that would be all right and I told him my father knew of the arrangements we had with the

business and if anything happened to him [me] it would be best for me [him] to have a note to show the money he had in there.''

The defendant admits that the principal specified in the note is the total of the amount which the plaintiff deposited in the account of the company, plus the sum which the defendant at the date of the note owed plaintiff for labor.

■ It is the defendant's contention that the affirmative matter alleged in his answer transferred the entire proceeding to the equity side of the court, and that after equity acquired jurisdiction of the cause it should have proceeded to determine fully all the matters in issue. There were, however, no special facts alleged in defendant's affirmative answer, or proved at the trial, to evoke equitable jurisdiction. The facts set forth in the answer did not necessitate the interposition of equity to afford defendant relief against plaintiff's claim, as they were available, if at all, in the law action. The trial court did not err in entering a decree dismissing the defendant's affirmative defense, as that part of the answer did not state facts sufficient to constitute an equitable defense: *Cripe v. Wade,* 123 Or. 111 (261 P. 72).

■ The defendant's affirmative answer is an apparent attempt to alter the terms and conditions of the written instrument sued upon, by an alleged contemporaneous parol agreement. No illegality or fraud is charged by the defendant in connection with the execution of this note; nor is it alleged or attempted to be proved that there was any mistake connected with the transaction. The defendant admits that he voluntarily prepared, signed and delivered the note to the plaintiff, and that it represented what was due the

plaintiff at the date of the note, for labor performed and for cash which was deposited in the bank subject to defendant's control. There was obviously a sufficient consideration for the giving of the note. In view of what has been said, the affirmative defense to plaintiff's cause of action is unavailing, as it is an attempt to allege and prove a contemporaneous oral agreement for the purpose of varying the legal effect of the note: *United States Rubber Company v. Kimsey,* 145 Or. 73 (26 P. (2d) 565), and authorities therein cited.

■ At the commencement of the trial counsel for the defendant in open court stated that, "It is agreed that the equitable phase of the case and the law action will all be tried out together." No application seems to have been made by either of the parties to the litigation for a jury trial, and it must be assumed from the statement of counsel above quoted, and the acquiescence therein by the plaintiff, that both the plaintiff and the defendant consented to the trial of the action without the intervention of a jury.

■ The findings of the trial court in the law action were in favor of the plaintiff, and inasmuch as there is sufficient evidence to support those findings the judgment appealed from must be affirmed.

RAND, C. J., and BEAN and CAMPBELL, JJ., concur.

Petition for rehearing denied July 24, 1934

ON PETITION FOR REHEARING
(34 P. (2d) 975)

BAILEY, J. The appellant, C. C. Curl, has filed a petition for rehearing, assigning two grounds for requesting it, as follows:

"I. The appellant's answer being within the pale of equitable jurisdiction, and the respondent having failed to object to the equitable jurisdiction, and having prayed for equitable relief, the trial court erred in dismissing the equitable cross-bill of the appellant.

"II. That the trial court erred in failing to hold that a partnership existed between the appellant and respondent and that the promissory note in suit was given to evidence a partnership obligation, if anything, for that reason was without consideration and void as to defendant."

In support of his first contention the appellant charges that this court based its decision on *Cripe v. Wade,* 123 Or. 111 (261 P. 72), and ignored *Hudson v. Goldberg,* 123 Or. 339 (262 P. 223), and *Bank of Freewater v. Hyett,* 137 Or. 193 (1 P. (2d) 1113).

In the case at bar the plaintiff in his reply did not allege any facts necessitating the interposition of a court of equity. The prayer of the reply, however, is as follows:

"Wherefore, having fully replied to defendant's answer on file herein, plaintiff prays for judgment as in plaintiff's complaint on file herein, and for plaintiff's costs and disbursements of this suit, and for such other and further relief as pertains to equity and good conscience."

Because the latter part of this prayer is "for such other and further relief as pertains to equity and good conscience", it is contended by petitioner that the trial court should have disposed of the entire cause as

a suit in equity, instead of dismissing defendant's answer in so far as it sought equitable relief and entering a judgment at law.

In our former opinion in this case we pointed out that counsel for the defendant, petitioner here, at the commencement of the trial stated that "it is agreed that the equitable phase of the case and the law action will all be tried out together". This clearly indicates that the plaintiff had not abandoned his action at law and that counsel for the defendant so understood plaintiff's position.

A short review of the two cases which counsel now contend we ignored in our former opinion will demonstrate their inapplicability to the situation here.

In *Hudson v. Goldberg,* supra, the plaintiff in his complaint alleged that he and the defendant had entered into a contract whereby the plaintiff was to purchase certain medical remedies and was to be given the exclusive right to manufacture and sell the same in a certain designated territory; and that pursuant thereto the plaintiff had executed and delivered to the defendant his promissory note in the sum of $2,500, which was not yet due, and had thereafter borrowed sums of money from the defendant, for which he had given shares of certain corporate stock as security. The complaint then stated that the defendant had breached the terms of the contract to be performed by him, resulting in damages to the plaintiff. The prayer of plaintiff was for a cancellation of the agreement, for an order restraining the defendant from disposing of the promissory notes and collateral securing the same, for the delivery of said notes by the defendant to the plaintiff, and for other relief.

To this complaint the defendant filed an answer in which he set forth the contract between himself and

the plaintiff, the execution and delivery of a note for $2,500 by the plaintiff to the defendant, the securing of the same by a mortgage on certain real property, the execution of other notes for money borrowed and the securing of the same, also the delivery of a stock of goods by the defendant to the plaintiff in an amount exceeding $12,000 in value for the purpose of permitting the plaintiff to sell the same and account to the defendant for the proceeds thereof. The answer averred that no accounting had been made by the plaintiff to the defendant.

The defendant for relief prayed that the plaintiff be required to account to him for all goods received, that plaintiff be restrained from disposing of the real property, and that the defendant recover from plaintiff a sum in excess of $11,000.

On the trial of the case the court entered a decree in favor of the defendant for his costs and disbursements, from which decree the plaintiff appealed. It is therefore obvious that the nature of that proceeding was altogether different from that of the case at bar. There, equity was invoked by the plaintiff in the first instance, and the defendant by the allegations of his answer also set forth facts which brought his defense and counter-claim within the cognizance of a court of equity.

In *Bank of Freewater v. Hyett,* supra, the plaintiff commenced an action on two promissory notes executed and delivered by the defendants Hyett, payable to the plaintiff. The defendants Hyett caused to be brought into the case as party defendants C. A. Crowe and David Harris. In their answer the Hyetts set forth the transactions between themselves and the plaintiff resulting in the execution by the Hyetts of the notes sued upon by the plaintiff, and other dealings

growing out of the transactions above referred to, whereby a note in the sum of $2,400 was given by them to the plaintiff bank and by said bank transferred to the defendants Crowe and Harris.

The trial in the lower court resulted in a decree canceling all the notes above mentioned. On appeal to this court the bank and the defendants Crowe and Harris as appellants in their brief requested that the decree of the circuit court be reversed and one entered here in favor of the plaintiff on the $3,000 note and in favor of the defendants Crowe and Harris on the $2,400 note. No objection was made by the respondents to the jurisdiction of this court to enter such judgment in the event that the decree of the trial court should be reversed. Moreover, this court, in determining the questions presented on appeal, did not hold that the facts alleged in the answer were insufficient to invoke the jurisdiction of equity, but, having fully disposed of any defense which the defendants Hyett might have had to the action on the $3,000 note, on other grounds, entered thereon a judgment against them and in favor of the plaintiff.

Returning now to the facts in the case at bar, we note that the plaintiff upon filing his complaint on the law side of the court caused a writ of attachment to be issued and certain real and personal property to be attached.

On June 13, 1933, the circuit judge notified counsel for the litigants that in his opinion the facts as set forth by the defendant did not entitle the latter to equitable relief and that he would consider the matter alleged by the defendant "as an answer at law"; also that plaintiff was entitled to judgment as prayed for in his complaint. Pursuant to and in accordance with the announcement that the defendant should not have

equitable relief and that the plaintiff should have judgment for the amount prayed for, counsel for plaintiff served upon one of the attorneys for the defendant separate proposed findings of fact and conclusions of law in relation to both the equitable and the legal aspects of the proceeding.

On July 10, 1933, more than two weeks after these proposed findings of fact and conclusions of law were served upon the defendant's attorney, the court signed the proposed findings of fact and conclusions of law regarding the equitable aspect of the case and entered a decree in accordance therewith, dismissing the answer in so far as it involved an equitable defense, and on the same day signed the proposed findings of fact, conclusions of law and judgment based on the allegations of the complaint. The judgment provided for the sale of the attached real and personal property.

The record fails to disclose that defendant's counsel objected to this procedure by the trial court, although they had ample notice thereof from the written opinion of the trial judge, and further knowledge from the submission of the proposed findings of fact and conclusions of law to which attention has been directed.

██ An attachment is a special auxiliary remedy, a creature of the statute, and belongs exclusively to a court of law: *Fischer v. Gaither,* 32 Or. 161 (51 P. 736); *Spores v. Maude,* 81 Or. 11 (158 P. 169). The procedure relating to the procuring of a lien and the enforcement thereof is well defined by statute and by prior decisions of this court. The plaintiff was entitled, when the trial court found that there was no merit in the defendant's answer, to the entry of judgment in his favor, with provision for the sale of the attached property.

█ In view of the record in this case, the trial court, in our opinion, followed the correct procedure when it dismissed defendant's attempted equitable defense

and thereafter entered judgment in favor of the plaintiff: § 6-102, Oregon Code 1930. As already pointed out, the testimony in relation to both the attempted equitable defense and the action at law was heard at the same time. No objection was made to the suggestion of the trial court that the answer theretofore filed be considered, in so far as applicable, as an answer in the law action; nor was any request thereafter made by the defendant for permission to file an amended answer or to offer additional testimony.

■ The plaintiff did not submit the entire controversy to a court of equity by the use of certain language in the prayer of his complaint, hereinabove mentioned. The language relied upon by petitioner in that respect was mere surplusage, as there were no allegations in plaintiff's complaint or reply warranting the court to grant him equitable relief.

The defendant appealed from both the decree and the judgment, and in our former opinion we held that he had failed to allege or prove facts bringing the controversy within the cognizance of a court of equity. We adhere to that view of the matter. The conclusion we here reach is not in any wise in conflict with the cases on which the petitioner relies and which have at some length hereinbefore been reviewed.

Inasmuch as there was sufficient competent evidence to sustain the findings of fact in the law action, we are precluded from re-examining the testimony to determine whether or not the evidence preponderated in favor of the plaintiff or the defendant.

What we have hereinabove said obviates the necessity of considering the petitioner's second ground for asking a rehearing.

The petition is denied.

RAND, C. J., and BEAN and CAMPBELL, JJ., concur.